IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ANTHONY THOMAS,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>UNIVERSITY OF MIAMI, DR. JULIO FRENK, RICHARD SOBARAM, IVAN CEBALLOS, ELIZABETH INGRAO and JOHN & JANE DOE,<br><br>　　　　Defendants. | COMPLAINT IN A CIVIL ACTION<br><br>Case No. _____<br><br><br>JURY TRIAL DEMANDED |

Plaintiff ANTHONY THOMAS, as and for his complaint herein, alleges as follows:

**INTRODUCTION**

1.　Anthony Thomas was employed by Defendant University of Miami since 2016. He had an unblemished record of employment, receiving praise and accolades for his work with students and law enforcement in his role as Residential Life Night Director. In addition to working with students in a crisis management role on campus, Mr. Thomas has worked with young people throughout his adult life as a member of the clergy. Mr. Thomas' public service is not limited to his work in the ministry, however. Mr. Thomas is also a Tier 1 service- connected disabled veteran. He bravely served this nation as a member of the United States Marine Corps.

2.　Mr. Thomas' service to the University, the community, and this nation were swiftly overlooked, however, when Mr. Thomas sought a religious and medical exemption to the University's mask mandate. The University denied the exemption request and terminated Mr. Thomas' employment solely because he refused to compromise his deeply and sincerely held religious convictions that dictate against covering one's face as a measure purportedly to protect

against the spread of the respiratory virus commonly referred to as COVID-19. The discriminatory firing of Mr. Thomas violates his rights protected by Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act. In addition, the manner in which Mr. Thomas was fired (to wit: forcibly and publicly ejected from campus and thereafter falsely accused and maligned) violates various other state and federal laws detailed hereinbelow.

## PARTIES

3.      Plaintiff ANTHONY THOMAS (hereinafter referred to as "Mr. Thomas") is a former employee of Defendant UNIVERSITY OF MIAMI, a practicing Christian, and a person with a disability as defined by the American with Disabilities Act. Due to having to relocate to find new employment after being terminated, Mr. Thomas is now a resident of Collier County, Florida.

4.      Defendant UNIVERSITY OF MIAMI (hereinafter referred to as "Defendant" or "the University") is a private University and one of the largest employers in the State of Florida. The University is located in Miami-Dade County, Florida.

5.      Defendant DR. JULIO FRENK (hereinafter "Defendant Frenk") is the President of the University. The University website notes that Defendant Frenk is a "noted leader in global public health." Based on this and other information shared with Plaintiff, upon information and belief, Plaintiff was directly responsible for the overreaching and irrational policies of the University that resulted in the violation of Plaintiff's civil rights complained of herein. Defendant Frenk is a resident of the State of Florida.

6.      Defendant RICHARD SOBARAM (hereinafter "Defendant Sobaram") is the Assistant Vice President of University Affairs, an employee of the University, and oversaw the University Department in which Mr. Thomas worked. As further described hereinbelow,

Defendant Sobaram was personally and directly involved in violating Mr. Thomas' civil rights and the other unlawful acts alleged in this Complaint. Defendant Sobaram is a resident of the State of Florida.

7. Defendant IVAN CEBALLOS (hereinafter "Defendant Ceballos") is the Executive Director of Residential Life, an employee of the University, and was one of Mr. Thomas' supervisors. As further described hereinbelow, Defendant Ceballos was personally and directly involved in violating Mr. Thomas' civil rights and the other unlawful acts alleged in this Complaint. Defendant Ceballos is a resident of the State of Florida.

8. Defendant ELIZABETH INGRAO (hereinafter "Defendant Ingrao") is the Associate Director of Residence Life, an employee of the University, and was one of Mr. Thomas' supervisors. As further described hereinbelow, Defendant Ingrao was personally and directly involved in violating Mr. Thomas' civil rights and the other unlawful acts alleged in this Complaint. Defendant Ingrao is a resident of the State of Florida.

9. Defendants JOHN and JANE DOE represent employees of the University that personally violated Mr. Thomas' rights, either independently or in concert with others, and/or committed other unlawful acts against Mr. Thomas for which they should be held liable by way of this lawsuit.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because this is a civil action arising under the laws of the United States including 42 U.S.C. §2000-e, *et seq*.

11. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

12. Venue is proper in this District pursuant to 28 U.S.C. §1391 based on the residence of the Defendants.

**ALLEGATIONS OF FACT**

13. Mr. Thomas began his employment with the University in the position of Residential Life Night Manager on March 1, 2016. In this role, he was the head administrator on duty at night for all of the University residences.

14. Specifically, Mr. Thomas dealt with student deaths, sexual assaults, drug overdoses, alcohol poisoning and other alcohol-related incidents, mental health episodes, violent altercations, and other student hospitalizations.

15. It is undisputed that Mr. Thomas handled every incident with the utmost professionalism. He had the respect of University faculty, students, staff, and local law enforcement.

16. In fact, in the weeks leading up to his termination, Mr. Thomas was tasked by his superiors at the University with leading the training of all Residential Life student staff.

17. Mr. Thomas is also an ordained minister. Prior to moving to Florida and commencing his employment with the University, Mr. Thomas pastored a church in Oregon.

18. Mr. Thomas' Christian faith is central to his personhood. He lives his life based on the teachings of Jesus Christ and the tenets of his faith.

19. Mr. Thomas studies and does his best to adhere fully to the dictates of Scripture. Scripture, also known as the Holy Bible, is believed by Christians (including Mr. Thomas) to be the divinely inspired, infallible Word of God.

20. The Bible teaches in Psalm 91, for example, that no plague shall come near the dwelling of God's people. Genesis teaches that all men were created in God's image and

Romans 1:20 states "since the creation of the world God's invisible qualities – his eternal power and divine nature – have been clearly seen, being understood from what has been made, so that men are without excuse". Psalm 103:3 clearly states that God heals all our diseases. To summarize, true believers in God, such as Mr. Thomas, do not fear disease because God has created us healthy and free from disease, and if disease comes upon us, believers rely upon God for healing.

21. On this basis, Mr. Thomas has declined to receive inoculation against COVID-19 or wear a face covering. Mr. Thomas believes that to do either of these things would be an affront to God. Wearing a face covering would violate Mr. Thomas' sincerely held religious beliefs. As is clearly stated in Scripture, "we all, who with unveiled faces contemplate the Lord's glory, are being transformed into his image with ever-increasing glory, which comes from the Lord, who is the Spirit." 2 Corinthians 3:18.

22. In addition to Mr. Thomas' sincerely held religious beliefs dictating against mask wearing, Mr. Thomas has medical conditions that make mask wearing intolerable for him.

23. On these bases, in August 2021, Mr. Thomas requested a religious exemption and/or accommodation based upon his disability from the University's mandatory face covering policy.

24. The University placed Mr. Thomas on administrative leave while they contemplated his request. Thereafter, the University denied Mr. Thomas exemption/accommodation request.

25. Mr. Thomas appealed the decision internally, and also filed an internal complaint of discrimination with the appropriate office within the University. The appeal was denied and the complaint was ignored.

26. The University directed Mr. Thomas to return to work on September 2, 2021.

27. Still unwilling to violate the sincerely held tenets of his faith, but also not wanting to abandon his job, Mr. Thomas returned to work on that date as directed, but without a face covering.

28. Upon information and belief, Defendants Sobaram, Ceballos, and Ingrao conspired together and acted in concert to violated Mr. Thomas' civil rights by calling the police and making a false report against Mr. Thomas to have him arrested.

29. Specifically, the three individually named Defendants directed Mr. Thomas to go to the Office of Human Resources and to wait in the lobby. While Mr. Thomas waited there, said Defendants called the police and falsely reported that Mr. Thomas was causing a disturbance inside of the building. Said Defendants further accused Mr. Thomas of trespassing, and requested that the police arrest Mr. Thomas.

30. The police arrived and declined to arrest Mr. Thomas despite Defendants' demands to the contrary. The police also declined to forcibly remove Mr. Thomas from campus, also in contravention of the request of Defendants. As noted in the police report, Mr. Thomas committed no violation of law and there was no basis for police intervention.

31. Defendants persisted in their malicious discriminatory and retaliatory conduct against plaintiff by defaming Mr. Thomas' character and reputation by falsely telling students, staff, and faculty of the University that Mr. Thomas was terminated as a result of a violent episode that included throwing a chair. Nothing of the sort happened.

32. Following this incident, Mr. Thomas appealed directly to Defendant Frenk and sought his intervention to stop this discriminatory conduct. Defendant Frenk declined to intervene.

33. Upon information and belief, the stringent, overreaching, discriminatory COVID-19-related policies of the University are a direct result of Dr. Frenk's personal relationships with prominent public health officials, and Dr. Frenk and the University have profited financially from implementing such policies.

34. On September 7, 2021, the University sent a letter to Mr. Thomas terminating his employment. The letter was signed by Defendant Sobaram.

35. At that time, Mr. Thomas was earning an annual salary of $51,410.59. In addition, the University contributed $5,421 annually to Mr. Thomas' retirement account.

36. Mr. Thomas' daughter had just commenced her freshman year at the University. Due to Mr. Thomas being employed with the University, he enjoyed the benefit of 85% tuition remission for his daughter. He now has to pay all of that tuition.

37. Mr. Thomas has two other children whom he planned to send to the University. At that stage of his employment, he would have been entitled to 100% tuition remission. As a result of his termination, he has lost that benefit as well.

38. Annual tuition at this University is presently $53,122. Mr. Thomas is unemployed (other than some side work), and had to take out loans to cover his daughter's tuition this semester. He does not want her to have to drop out of the prestigious engineering program she was accepted into at the University, but he cannot afford the high cost of tuition. The loss of tuition renumeration benefit has been devastating to Mr. Thomas' family.

39. Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission, and was issued a Right to Sue letter dated November 1, 2021. A true and correct copy of the Right to Sue letter is attached hereto as **Exhibit "A"**.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, as amended, 42 U.S.C. §§2000e-2
### FOR EMPLOYMENT DISCRIMINATION ON THE BASIS OF RELIGION

40. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 above as though fully set forth herein.

41. The denial of Plaintiff's request for religious exemption and subsequent termination were unlawful acts of discrimination and retaliation in violation of the applicable provisions of Title VII of the Civil Rights Act of 1964.

### AS AND FOR A SECOND CAUSE OF ACTION
### TITLE I OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. §12101 et seq.)

42. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 above as though fully set forth herein.

43. Plaintiff is a person with a disability as defined by the Americans with Disabilities Act.

44. Defendants had an ongoing obligation to afford plaintiff a reasonable accommodation so that he could continue his employment with the University in spite of being afflicted with a disability.

45. Defendants failure to accommodate Plaintiff and subsequent termination of his employment constitute unlawful acts of discrimination against a person with a disability in violation of the Americans with Disabilities Act.

### AS AND FOR A THIRD CAUSE OF ACTION
### SECTION 504 OF THE REHABILITATION ACT

46. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 and 43 through 45 above as though fully set forth herein.

47. Upon information and belief, the University of Miami is a recipient of federal funding.

48. Defendants' actions described herein violate The Rehabilitation Act.

AS AND FOR A FOURTH CAUSE OF ACTION
42 U.S.C. §§1985 & 1986 FOR CONSPIRACY TO VIOLATE CIVIL RIGHTS

49. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 above as though fully set forth herein.

50. The individually named Defendants, and each of them, conspired together to deprive Plaintiff of his civil rights as described hereinabove.

51. Defendants acted in concert at all times relevant herein, and committed overt acts as hereindescribed in furtherance of their conspiracy to violate Plaintiff's civil rights.

AS AND FOR AN FIFTH CAUSE OF ACTION
DEFAMATION OF CHARACTER

52. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 above as though fully set forth herein.

53. Defendants have and continue to make false statements concerning Plaintiff to third parties including law enforcement and University faculty, staff, and students.

54. These defamatory statements have been injurious to Plaintiff's reputation.

55. Defendants falsely and intentionally continue to malign Plaintiff's character.

56. As a result of all of the actions of Defendants against Plaintiff as described herein, plaintiff has suffered and continues to suffer grave emotional distress and other tangible harm.

WHEREFORE, Plaintiff respectfully requests that the Court grant him relief as follows:

(i) Issue an Order directing the University of Miami to reinstate Plaintiff to his prior position of employment with the University and,

(ii)   Retroactively award plaintiff all salary, other compensation, and benefits (inclusive of tuition renumeration for his daughter) appurtenant to his position of employment; and,

(iii)  Award plaintiff monetary damages of Five Million Dollars on each cause of action, for a total of Twenty Five Million Dollars; and,

(iv)   Award plaintiff counsel fees and costs associated with this action; and,

(v)    Such other and further relief as this Court may deem just and proper.

Dated: Naples, Florida
January 27, 2022

BOATMAN RICCI

_s/_ James A. Boatman, Jr.
James A. Boatman, Esq.